**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHIRLEY J. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 C 34 |
| v. ) | |
| ) | Magistrate Judge Daniel G. Martin |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Shirley J. Williams (Williams) seeks judicial review of a final decision of the Acting Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) and supplemental security income (SSI). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Because the administrative law judge's decision is not supported by substantial evidence, the denial of benefits is reversed and this case is remanded for further proceedings consistent with this opinion.

## I. BACKGROUND

Williams protectively applied for DIB and SSI on November 12, 2008, alleging she became totally disabled on August 25, 2007 because of vertigo. (R. 127, 185-95). Williams was born on August 13, 1956 and suffers from a hernia, hypertension, vertigo, carpel tunnel syndrome, obesity, and bilateral knee osteoarthritis. (R. 43). Williams received an associate's degree in general studies from Harold Washington College in 2000. (R. 47). Williams has a driver's license but has not driven since 2008. (R. 49-50). Williams has past work experience as a records clerk, delivery driver, babysitter, and home health caregiver. (R. 51-54, 56). Williams' applications were denied at the initial and reconsideration levels. (R. 110-17, 124-31, 147-48, 360-62).

### A. Medical Evidence

On February 5, 2007, Williams visited the Michael Reese Hospital emergency room for vertigo. (R. 313-320). A CT scan of her brain taken that day was normal. (R. 321). Williams was prescribed Meclizine. (R. 314). On July 26, 2007, Dr. John C. Farmer prepared a Disability Statement in which he certified that Williams had been under his care for a hernia and "was totally incapacitated from July 26, 2007 to indefinite." (R. 374). Dr. Farmer further stated that as of July 26, 2007, Williams had sufficiently recovered to return to work with the following limitations: unable to lift 20 pounds or greater and unable to push/pull 165 pounds or greater. Id. On July 3, 2008, Williams was seen at a Cook County Clinic for a check-up. (R. 378-81). Williams complained of dizziness in the mornings. (R. 378). Williams was 5'4" tall and weighed 189 pounds. Id. Her BMI was 32. The doctor found that Williams' symptoms were consistent with benign paroxysmal positional vertigo and refilled her Meclizine prescription. (R. 381).

Dr. Roopa K. Karri, M.D., evaluated Williams on January 23, 2009 for approximately 42 minutes. (R. 336-39). Williams complained of knee pain. (R. 337). On physical examination, Dr. Karri noted that Williams was obese. (R. 337). Her BMI was 33.3. (R. 356). Williams had no trouble getting on and off the examining table. (R. 338). Dr. Karri determined that Williams could walk 50 feet without support, had normal grip strength, and had a normal range of motion of the shoulders, elbows, wrists, hips, ankles, lumbar and cervical spine. Id. Williams could tandem gait and her gait was non-antalgic without the use of assistive devices. Williams had a reduced range of motion in her knees, exhibiting flexion to 130 degrees and normal extension. Id. Dr. Karri found that Williams had tenderness in her knees with her left knee worse than her right. Id. Dr. Karri's impressions were: (1) history of vertigo with tinnitus and mild hearing impairment associated with nausea which comes and goes in spurts and etiology is unclear; (2) bilateral knee osteoarthritis with mildly decreased range of motion; and (3) obesity. (R. 339).

On February 5, 2009, Dr. Frank Jimenez, a non-examining state agency physician, reviewed Williams' medical records and assessed her RFC. (R. 349-56). Dr. Jimenez concluded that Williams could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds. (R. 350). He also found that Williams could sit, stand, and/or walk for about six hours in an eight-hour workday and push or pull for an unlimited period. Id. Dr. Jimenez noted that Williams could frequently climb, balance, stoop, kneel, crouch, and crawl despite her history of vertigo and bilateral knee pain. (R. 351). Dr. Jimenez found that Williams showed no manipulative, visual, or communicative limitations. (R. 352-53). Dr. Jimenez determined that Williams should avoid concentrated exposure to hazards like machinery and heights due to her history of vertigo. (R. 353). Dr. Jimenez concluded that Williams' statements "regarding vertigo are partially credible," but the extent of the limitations described by her "exceeds that supported by the objective medical findings." (R. 356).

A right knee x-ray on March 25, 2009 revealed "marked narrowing of patellofemoral joint space as well as the medial knee joint compartment. Moderate to marked narrowing of the lateral knee joint compartment. Small superior and interior patellar spurs. Tiny osteoarthritic spurs. No lytic or osteoblastic bony lesions." (R. 358-59).

In July 2010, Williams was seen at the Cook County Englewood Clinic ("Englewood Clinic") for a Meclizine refill and vertigo follow-up. (R. 364). Williams complained of carpel tunnel symptoms and symptoms of vertigo. Id. Williams had elevated blood pressure but refused medication. She wanted to try a low salt diet and weight loss to control her blood pressure. Id. The doctor diagnosed carpel tunnel syndrome and recommended a splint and non-steroidal anti-inflammatory drugs followed by, if needed, a steroid injection. Id.

On September 23, 2010, Williams visited the Englewood Clinic again. (R. 365). Williams' blood pressure was elevated at 142/92, but she denied symptoms related to hypertension. Id. Williams agreed to start blood pressure medication. Williams also complained of a four-week

history of left hand pain at a level of 9 out of 10 with no current pain. Id. At a routine checkup on November 22, 2010, Williams complained of carpal tunnel symptoms in her left wrist but reported no current pain. (R. 401). Williams weighed 182 pounds and had a BMI of 31. Id. The doctor advised Williams to continue using the splint for her carpal tunnel symptoms. Id.

On June 27, 2011, Williams saw Dr. Debbie Donelson at the Englewood Clinic. (R. 399-400). Williams reported that she had been using her splint and exercising which was "helping the carpal tunnel on her left wrist." (R. 399). Dr. Donelson diagnosed osteoarthrosis, localized and primarily involving the lower leg, and hypertension. (R. 400). Williams requested a medication refill and injections in both knees. (R. 399). Dr. Donelson scheduled bilateral knee injections for August 10, 2011. (R. 400).

### B. Plaintiff's Testimony

At the administrative hearing before the ALJ on November 2, 2010, Williams stated that she is right-handed and suffers from daily pain and constant burning in her left hand. (R. 64-66). Williams explained that the wrist split helps because it keeps her from moving her hand in certain ways. (R. 65). Williams wears her splint during the day but sometimes takes it off because her left hand still hurts and burns with the split on. Id. She testified that her doctor also gave her a prescription for ibuprofen but did not refer her to a specialist. (R. 65-66). Williams rarely takes the ibuprofen because it interferes with her high blood pressure medication. (R. 66).

Williams testified that she also suffers from dizzy spells and buzzing in one of her ears. (R. 67-68). When the dizzy spells start, she feels like the room is spinning. (R. 68). The actual dizzy spells last one to two minutes but it takes Williams about four days after an attack to fully recover during which time she is bedridden. (R. 68, 85). Williams takes Meclizine when feeling nausea or having an attack. (R. 70). Because she was advised by her doctor that there is no cure for her dizzy spells, Williams has not pursued specialist treatment. (R. 74).

In terms of her physical abilities, Williams testified that she has a problem lifting and typing with her left hand and has trouble standing for a long period of time because of balance issues. (R. 82-83, 88). Williams stated that she experiences severe pain in her knees when she walks up and down stairs. (R. 87-88). Williams testified that she could not stand for six hours in an eight-hour workday. (R. 88). At the time of the hearing, Williams lived with one of her daughters who helped her. (R. 44). Williams' daily activities are limited. On a typical day, she passes the time by watching television and looking out the window. (R. 78). Williams loves computers. (R. 80). She emails and plays computer games. (R. 81). Williams sometimes reads the newspaper or magazines. (R. 81). Twice a week, Williams does a little housework. (R. 79). She prepares easy and quick meals like sandwiches and salads. Id. Williams testified that she does laundry once a month and dishes twice a week. Id. Williams' daughters do the grocery shopping for her. Id.

### C. Vocational Expert's Testimony

Thomas Dunleavey testified at the hearing as a vocational expert ("VE"). (R. 94-106). He identified Williams' past relevant work as a director of records, records clerk, delivery driver, child monitor, and home health worker. (R. 100-102). The ALJ presented a hypothetical of an individual of Williams' age, education, and work experience who could perform a full range of light and sedentary work with the following exceptions: never climb ladders, ropes or scaffolds, work on moving or unstable surfaces or perform work that would expose her to unprotected heights or unguarded hazardous equipment; no repetitive pushing or pulling against resistance with the left upper extremity; and no crawling. (R. 103-04). The VE testified that such an individual would be able to perform Williams' past relevant jobs as director of records and records clerk at the sedentary level. (R. 104). The VE further testified that Williams' prior work provided transferrable skills to other sedentary occupations, such as customer order clerk (5,000 jobs) and data entry clerk (15,000 jobs). (R. 102-04). Williams' attorney asked the VE if the individual described in the hypothetical could still perform her past sedentary jobs if she could not type with her left hand. (R.

106). The VE responded that all past sedentary work would be precluded if Williams could not type with her left hand. Id.

### D. ALJ's Decision

Under the required five-step analysis used to evaluate disability, ALJ Helen Cropper found that Williams had not engaged in disqualifying substantial gainful activity since her alleged onset date of August 25, 2007 (step one); her dizziness, osteoarthritis, and obesity were severe impairments (step two); but they did not qualify as a listed impairment (step three). (R. 13-16). The ALJ determined that Williams retained the residual functional capacity (RFC) to perform a wide range of light and sedentary work, i.e., lift/carry up to 10 pounds frequently and up to 20 pounds occasionally; sit, stand and/or walk throughout a normal workday, with typical breaks; no constant repetitive pushing or pulling against resistance with the lower extremities or the left upper extremity; never climb ladders, ropes or scaffolds, work on moving or unstable surfaces, or work around unprotected heights or unguarded hazardous equipment. (R. 16). The ALJ also found Williams should not crawl. Id. The ALJ determined that Williams had normal bilateral manual dexterity and grip strength. Id. According to the ALJ, Williams would be distracted only rarely by dizziness, pain or other symptoms to the extent that she would be off task and not productive outside break time. Id.

Given this RFC, the ALJ concluded that Williams was able to perform her past relevant work as a records clerk as that job typically is performed (step four). (R. 25). Although the ALJ decided that Williams was not disabled at step four, she also determined that Williams acquired skills in her past work transferable to other sedentary occupations, including customer order clerk (5,000 jobs) and data entry clerk (15,000 jobs). Id. The Appeals Council denied Williams' request for review on November 7, 2012. (R. 1-6). Williams now seeks judicial review of the final decision of the Acting Commissioner of Social Security Carolyn Colvin, which is the ALJ's ruling. O'Connor-Spinner v. Astrue, 627 F.3d 614, 618 (7th Cir. 2010).

## II. DISCUSSION

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled within the meaning of the Act, the ALJ conducts a five-step sequential inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, see 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a) (2004); Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." Clifford, 227 F.3d at 868 (quoting Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence, based upon a legal error, or too poorly articulated to permit meaningful review. Hopgood ex rel. v. L.G. v. Astrue, 578 F.3d 696, 698 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). In its substantial evidence review, the court critically reviews the entire administrative record but does not reweigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its own judgment for that of the Commissioner. Clifford, 227 F.3d at 869. An ALJ's credibility determination is generally entitled to deference and will not be overturned unless it is patently

wrong. Schaaf v. Astrue, 602 F.3d 869, 875 (7th Cir. 2010).

The ALJ denied Williams' claim at step four, finding that Williams retained the RFC to perform a wide range of light and sedentary work including her past work as a records clerk. Williams challenges the ALJ's finding that her carpal tunnel syndrome was a non-severe impairment, failure to properly account for her carpal tunnel syndrome in the RFC determination, and failure to give controlling weight to her treating physician's opinion. For the following reasons, the ALJ's decision is not supported by substantial evidence.

### A. Step Two

Williams first argues that the ALJ erred in finding that her carpal tunnel syndrome was a non-severe impairment at step two. At step two, the ALJ determines whether the claimant has a "severe medically determinable physical or mental impairment . . . or a combination of impairments that is severe . . . ." 20 C.F.R. § 416.920(a)(4)(ii). Step two is a threshold step and "[a]s long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluative process." Castile v. Astrue, 617 F.3d 923, 926-27 (7th Cir. 2010).

The ALJ here determined that Williams' carpal tunnel syndrome (CTS) was not severe because Williams had not had diagnostic testing, such as an EMG or nerve conduction study, had not been seen or referred to a specialist to assess her CTS complaints, had not had a steroid injection, and reported at her post-hearing doctor's visit that her CTS symptoms had improved. (R. 13-14). The ALJ concluded that the objective medical evidence did not establish that Williams had suffered from a medically determinable severe left wrist or hand impairment of 12 months or longer duration during the relevant time. (R. 14). The ALJ found Williams' dizziness, osteoarthritis and obesity were severe impairments and proceeded to the remaining steps of the five-step sequential. The ALJ's failure to find Williams' carpal tunnel syndrome as a severe impairment at step two is not a reversible error because the ALJ categorized three other impairments as severe and proceeded to step four. Arnett v. Astrue, 676 F.3d 586, 591 (7th Cir. 2012) (stating "even if there

was a mistake at Step 2, it does not matter. Deciding whether impairments are severe at Step 2 is a threshold issue only; and ALJ must continue on to the remaining steps of the evaluation process as long as there exists even *one* severe impairment.").

**B.     Residual Functional Capacity Assessment**

Williams additionally argues that the ALJ's finding of her residual functional capacity was not supported by substantial evidence. "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004). In determining an individual's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." Villano v. Astrue, 556 F.3d 558, 563 (7th Cir. 2009).

The ALJ found that Williams retains the residual functional capacity to perform a wide range of light and sedentary work (i.e., lifting/carrying up to 10 pounds frequently and 20 pounds occasionally, standing/walking 6 hours in an 8-hour workday, and sitting 6 hours in an 8-hour workday) except she should not do constant repetitive pushing or pulling against resistance with the lower extremities or the left upper extremity, never climb ladders, ropes or scaffolds, work on moving or unstable surfaces, or work around unprotected heights or unguarded hazardous equipment, and should not climb. (R. 16). The ALJ partially credited the opinions of the state agency physicians as the basis for her RFC determination. The ALJ stated: "I give some weight to the opinions of the reviewing State agency doctors, and agree with them that claimant should not perform work that would be dangerous in the event of a dizzy spell, as discussed in detailed above, but find that subsequent evidence suggests that medium work level would be too strenuous for claimant." (R. 19).

Williams contends that the ALJ failed to properly consider the effect of her carpal tunnel syndrome and her inability to type with her left hand when assessing her RFC. The ALJ noted that Williams testified that she is unable to type or use computer keyboards because of pain in her left

hand and that she was required to type at all of her past records clerk jobs. (R. 21, 22). The ALJ rejected Williams' testimony that she cannot type because of the symptoms of carpel tunnel syndrome in her left hand. In her earlier discussion at step two, the ALJ reasoned that Williams had not had diagnostic testing, such as an EMG or nerve conduction study, had not been seen or referred to a specialist to assess her carpal tunnel symptoms, and had not had a steroid injection. (R. 13-14). The ALJ also pointed out that at her June 27, 2011 appointment, Williams reported that her carpel tunnel symptoms had improved. (R.13).

The Commissioner asserts that Williams' contention that her left hand condition limits her ability to type and thus prevents her from working is uncorroborated by any medical opinion. The Commissioner points out that none of the doctors who treated or examined Williams limited her ability to type, her ability to use her hands for fine or gross manipulation, or her abilities to handle or finger. The Commissioner cites Dr. Karri's examination for support because he found that Williams had normal strength and hand functioning. (R. 338). The Commissioner also cites treatment notes from the doctors at the Englewood Clinic which purportedly show that Williams had no left hand pain following treatment with a wrist splint. (R. 375, 399, 401).

None of the ALJ's reasons are sufficient to justify her finding that Williams could still perform work requiring typing. It does not logically follow that, because Williams had not had diagnostic testing, had not been referred to a specialist, and had not had a steroid injection, that she has no carpal tunnel symptoms in her left hand and could perform a job requiring typing or keyboarding. A failure to follow a recommended course of treatment can weigh against a claimant's credibility, Craft v. Astrue, 539 F.3d 668, 679 (7th Cir. 2008), but the record does not show that diagnostic testing, a referral to a specialist or a steroid injection was prescribed in Williams' case. The ALJ's implication that Williams would have been referred for diagnostic testing, to a specialist, or had a steroid injection if she was disabled by carpal tunnel symptoms "impermissibly substitutes the ALJ's personal observations for the considered judgment of medical professionals." Schomas v. Covlin,

732 F.3d 702, 709 (7th Cir. 2013). Under these circumstances, it was improper to reject Williams' testimony that she is unable to type with her left hand based on the absence of any attempt to seek diagnostic testing, a referral to a specialist, or a steroid injection. See Dixon v. Colvin, 2014 WL 899190, at * 7 (N.D. Ind. March 7, 2014) (remanding where the ALJ based his finding that plaintiff's medical history did not indicate disabling impairments on plaintiff's failure to have surgery for carpal tunnel syndrome, receive steroid injections, and lack of a prescription for wrist splints where the medical records did not indicate that plaintiff should have had these procedures and the ALJ did not ask plaintiff during the hearing why she chose not to pursue them). Furthermore, the fact that the wrist splint and exercising "help[ed] the carpal tunnel on her left wrist" does not mean that Williams' pain has completely resolved or that her carpal tunnel syndrome no longer affects her ability to type in the work place. Dr. Donelson did not find that the wrist splint and exercising eliminated the symptoms of Williams' carpel tunnel syndrome but rather, advised Williams to continue using the split. (R. 399-400).

Moreover, the record lacks medical evidence to support the ALJ's RFC finding that Williams is able to perform the typing requirements of her past relevant work as a records clerk. Williams received her carpel tunnel syndrome diagnosis on February 27, 2010. (R. 364). The Disability Determination and Transmittal Forms, which the ALJ gave "some weight," were completed on February 6, 2009 and April 15, 2009 and mention only Williams' vertigo and osteoarthrosis. (R. 19, 110-13, 127, 131, 362). The RFC assessment by state agency physician Dr. Frank Jimenez was completed on February 5, 2009 and lists a history of vertigo, tinnitus, mild hearing impairment, bilateral knee osteoarthritis, and obesity as impairments. (R. 349-56). Because Williams received her carpel tunnel syndrome diagnosis after the state agency physicians reviewed her record, the physicians did not address it. The ALJ also found, based on Dr. Roopa Karri's consultative physical examination on January 23, 2009, that Williams had normal bilateral manual dexterity and normal bilateral grip strength (R. 16, 18, 338), but the consultative examination findings preceded

the first formal diagnosis of carpel tunnel syndrome by more than a year. Because there was no medical expert opinion for the ALJ to consult to determine the impact Williams' carpel tunnel syndrome has on her ability to perform a job involving typing, the Court fails to see how the ALJ could properly assess the extent of Williams' carpel tunnel syndrome. This case must therefore be remanded for a new RFC determination. Barrett v. Barnhart, 355 F.3d 1065, 1068 (7th Cir. 2004) (finding ALJ erred because the court did "not know on what basis he decided [the claimant] can stand for two hours at a time" and "[n]o physician said that."). Given that Williams' only consultative physical examination occurred more than a year before she was diagnosed with carpel tunnel syndrome, the ALJ on remand should strongly consider ordering another medical evaluation to determine Williams' ability to type. Scott v. Astrue, 647 F.3d 734, 741 (7th Cir. 2011); Smith v. Apfel, 231 F.3d 433, 437-38 (7th Cir. 2000).[1]

Contrary to the Commissioner's position, Williams' assertion that her left hand condition limits her ability to type is not uncorroborated by the medical record. The objective medical evidence shows a diagnosis of carpal tunnel syndrome which was treated with a wrist splint and medication. Williams also produced evidence in the form of her own testimony that she is unable

---

[1] Similarly, Drs. Karri and Jimenez did not review or consider Williams' right knee x-rays which later became available. The consultative examination and RFC were completed in January and February 2009 and Williams' right knee x-rays were done on March 25, 2009. As the ALJ noted, the x-rays of Williams' right knee "showed degenerative changes and moderate to marked narrowing of the knee compartments." (R. 18, 358). Moreover, on June 27, 2011, Williams had crepitus in both knees and knee injections were scheduled that day for August 10, 2011. (R. 399-400). The ALJ found, however, that Williams retains the ability to "stand and/or walk throughout a normal workday, with typical breaks." (R. 16). It is not clear on what basis the ALJ found that although Williams suffered knee pain, she could stand and walk without limitation. The ALJ does not have the expertise to interpret how an x-ray impacts functional limitations such as standing and walking in the workplace. Dr. Karri's finding that Williams could walk "50 feet without support" (R. 338) does not demonstrate an ability to stand for 6 hours. See Thomas v. Colvin, 534 Fed. Appx. 546, 551 (7th Cir. 2013). The Court recognizes that the ALJ found Williams capable of performing her past relevant work as a records clerk, which is a sedentary job. "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). Because the case requires remand on other grounds to reevaluate Williams' RFC, the ALJ shall obtain and consider a physician's interpretation of Williams' right knee x-rays and an updated opinion on her ability to stand and walk.

to type with her left hand due to pain and burning. The Commissioner selectively cites portions of Englewood Clinic doctors' reports in an effort to show that Williams had "no left hand pain" following treatment with a wrist splint. (Doc. 19 at 11). The record reflects that although Williams reported she had no pain on the days of her September 23 and November 22, 2010 appointments, Williams described having pain upon movement for 4 weeks prior to her September 23 visit at a level of 9 out of 10. (R. 375). Moreover, at the November 22, 2010 visit, the doctor did not find that the splint had entirely resolved the symptoms from Williams' carpal tunnel syndrome, but rather, recommended that Williams continue using the wrist splint. (R. 401). As pointed out by the Commissioner, it is true that none of Williams' doctors limited her hand functioning due to wearing the left wrist splint. It is equally true, however, that no physician opined that Williams is able to type with her splinted left hand. The true extent of Williams' left hand impairment is unclear as none of the treating, examining, or reviewing physicians identified how her carpel tunnel syndrome and wrist splint effect Williams' ability to type or her ability to work. It was the ALJ's responsibility to recognize the need for further medical evaluation of Williams' left hand condition before making her RFC and disability determinations. Suide v. Astrue, 371 Fed. Appx. 684, 690 (7th Cir. 2010).

The ALJ's error in finding that Williams can perform jobs requiring typing despite her carpel tunnel syndrome symptoms is not harmless. The VE testified that all past sedentary work as a records clerk would be precluded if Williams was unable to type with her left hand. (R. 106). Williams points out that the ALJ's decision was dated just three days before her 55th birthday. Williams argues that the Medical-Vocational Guidelines or Grids would direct a finding of disabled for Williams at age 55 if she is unable to perform her past work because of an inability to type with her left hand. The Commissioner responds that "[b]ecause the ALJ found Plaintiff capable of returning to her past relevant work as a records clerk, no further consideration of her claim at step five was warranted and therefore, Plaintiff's citation to the Medical-Vocational Guidelines is inappropriate." (Doc. 19 at 15). Since the case is being remanded for further consideration of

Williams' RFC, the ALJ should address the Grids, if appropriate, if she finds that Williams cannot perform her past work.

### C. Treating Physician's Opinion

Williams also argues that the ALJ improperly rejected the opinion of her treating physician, Dr. John C. Farmer, which indicated that she is unable to lift 20 pounds or greater. (R. 374). A treating physician's opinion is entitled to controlling weight if it is supported by objective medical evidence and is consistent with other substantial evidence in the record. 20 C.F.R. 416.927(c)(2). "Obviously if [the treating physician's medical opinion] is well supported and there is no contradictory evidence, there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it. Equally obvious, once well-supported contradictory evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight." Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006). At that point, "the treating physician's evidence is just one more piece of evidence for the administrative law judge to weigh." Id. at 377. Finally, a claimant is not disabled simply because his treating physician says so. Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001); 20 C.F.R. § 416.927(e)(1). "The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." Dixon, 270 F.3d at 1177 (quoting Stephens v. Heckler, 766 F.2d 284, 289 (7th Cir. 1985)).

On July 26, 2007, one month before Williams alleges that she became disabled, Dr. Farmer indicated on a form that Williams was "totally incapacitated" as of July 26, 2007 to "indefinite." (R. 374). Dr. Farmer indicated on the same form that Williams was "sufficiently recovered to return to work/school" with the following limitations related to her diagnosis of incisional hernia: "unable to lift 20 pounds or greater" and "unable to push/pull 165 lbs or greater." Id. The ALJ noted Dr. Farmer's July 2007 opinion in her decision and stated that she did not give controlling weight to Dr. Farmer's opinion that Williams is disabled, as that decision was reserved to the Commissioner.

(R. 19). Williams faults the ALJ for not specifically addressing the weight she gave to Dr. Farmer's twenty-pound lifting restriction.

Williams' argument is one of semantics and she is not entitled to reversal on this ground. The ALJ found that Williams can lift and/or carry *up to* twenty pounds occasionally and ten pound frequently (R. 16), while Dr. Farmer found that Williams was unable to lift twenty pounds or greater. (R. 374). Williams fails to explain any difference between being able to lift "up to 20 pounds" and being "unable to lift 20 pounds or greater." Furthermore, the ALJ ultimately found Williams was capable of returning to her past relevant work as a records clerk, which the vocational expert classified as sedentary work as generally performed in the economy and thus did not require lifting 20 pounds or greater as precluded by Dr. Farmer. 20 C.F.R. § 404.1567(a) (stating sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."). The Court concludes that the ALJ's RFC determination was not inconsistent with Dr. Farmer's opinion regarding Williams' lifting abilities.

### III. CONCLUSION

For the reasons and to the extent stated herein, Plaintiff's Motion for Summary Judgment [14] is granted in part and denied in part. The ALJ's decision is reversed and this case is remanded for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff Shirley J. Williams and against the Defendant Acting Commissioner of Social Security Carolyn W. Colvin.

**E N T E R:**

*Daniel G. Martin*

**Daniel G. Martin**
**United States Magistrate Judge**

**Dated: May 21, 2014**